SCHLAFLY v. MERCANTILE TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. May 12, 1925.)

No. 6623.

1. **Trover and conversion** ☞59 — **Damages mitigated by application of proceeds to owner's debt and his acceptance of benefits.**

Mitigation of damages from conversion arises from converter applying the proceeds to payment of a debt due from the owner, and his acceptance of the fruits thereof, which is equivalent to return of the property, where the proceeds are the value of the property.

2. **Trover and conversion** ☞40(6)—**Evidence held to show acceptance of benefit of application of payment, mitigating damages.**

Evidence relative to mitigation of damages from conversion *held* to show, not only that application by converter of proceeds of converted property to payment of interest coupons secured by lien on much of owner's property was a benefit to owner and his bankrupt estate, but also their acceptance of the fruits thereof.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles S. Faris, Judge.

Action by John F. Schlafly, trustee in bankruptcy of the Temtor Corn & Fruits Products Company, against the Mercantile Trust Company. Judgment for plaintiff for less than claimed, and plaintiff brings error. Affirmed.

Frank H. Sullivan, of St. Louis, Mo. (James C. Jones, Jr., Lon O. Hocker, and Eugene H. Angert, all of St. Louis, Mo., on the brief), for plaintiff in error.

S. L. Swarts, of St. Louis, Mo. (Samuel A. Mitchell, of St. Louis, Mo., on the brief), for defendant in error.

Before STONE and KENYON, Circuit Judges, and KENNEDY, District Judge.

STONE, Circuit Judge. Plaintiff in error, Schlafly, trustee in bankruptcy of Temtor Corn & Fruit Products Company, brought this suit against Mercantile Trust Company for conversion of $50,000 in United States treasury certificates. From a judgment on a directed verdict for $100 in favor of plaintiff, Schlafly sues this writ of error. The $100 covered by the judgment is the amount still in the hands of the trust company as proceeds of these certificates and which the trust company had not applied to payment of interest coupons hereinafter discussed.

As of April 1, 1921, the Temtor Company had executed a deed of trust, wherein the trust company was trustee, to secure the payment of $1,500,000 of bonds bearing 8 per cent. interest payable semi-annually on October 1st and April 1st respectively. This instrument provided for a sinking fund to cover all interest payments except the first interest payment, which was due October 1, 1921. The corporate by-laws of the Temtor Company vested all of the powers of the company in "the board of directors except as otherwise prescribed by statute or by the certificate of incorporation or by the by-laws"; provided for an executive committee which should "between sessions of the board have and exercise all the powers of the board of directors in the management of the business and affairs of the corporation (excepting matters delegated to or within the jurisdiction of the finance committee)"; provided for a finance committee which should "have control over the finances of the corporation"; provided that the action of either of these committees should "be subject to revision or alteration by the board provided that no rights of third persons shall be affected by such revision or alteration"; provided for a president who should "exercise, subject to the control of the board of directors, general supervision over the affairs of the corporation, * * * cause all orders and resolu-

tions of the board of directors to be performed and carried into effect, * * * and * * * such other and further powers and perform such other and further duties as may be assigned to him, from time to time, by the board of directors"; and provided for a treasurer who should have "the custody of the funds and securities of the corporation which may come into his hands * * * " and "such other and further duties as may be assigned him, by the board of directors."

At a joint meeting of the executive and finance committees, May 3, 1921, there was passed the resolution following: "The treasurer was authorized to purchase during the next six months—May 1st to September 30th—$10,000 per month of treasury certificates as a sinking fund for the $60,000 interest on the mortgage due October 1, 1921."

Acting under the authority of this resolution, Mr. Whitney, treasurer of the Temtor Company, purchased such certificates to the face value of $50,000 through the trust company and left them with that company. These purchases were by remittances made at various times beginning June 4 and ending September 8, 1921. By two letters, on September 20th and 21st, Mr. Whitney demanded the immediate return of the certificates. On September 29th, the president of the Temtor Company wrote the trust company demanding such immediate return and also stated therein: "We further advise and instruct you not to convert such certificates into cash, and not to pay the semiannual interest on the $1,500,000.00 of first mortgage collateral trust 8 per cent. serial gold bonds of this company, of which, under the terms of the mortgage, you are the trustee, which will be due on October 1, 1921."

On September 29th and apparently before receipt of the above letter from the president of the Temtor Company, the trust company sold the certificates. October 1, 1921, the first communication from the trust company, later than the three above letters, contained the following: "By virtue of an arrangement made with us some time ago and the directions heretofore given, we have sold the government certificates deposited with us and have this day used the proceeds toward the payment of the interest coupons maturing October 1, 1921, on your first mortgage collateral trust 8 per cent. serial gold bonds." All except $100 of the fund so realized was applied by the trust company to payment of the interest coupons.

On February 18, 1922, an involuntary petition was filed to have the Temtor Company declared bankrupt. It was so adjudicated and the trustee therein (Schlafly) brought this action against the trust company for conversion. The trust company, besides a general denial, pleaded four matters: That it held the certificates in trust for the holders of the interest coupons due October 1, 1921; that it had applied the proceeds from the sale of the certificates, up to the full value thereof, to the debt of the Temtor Company then due; that the Temtor Company had ratified the sale of the certificates and the payment of the interest coupons; that the plaintiff was estopped from recovering herein. The trial court determined that the trust company was a bailee as to these certificates and the resulting proceeds and that plaintiff's damages was the value of the proceeds realized on sale of the certificates but that the defendant had the right to offset these damages by the amount it had paid on the interest coupons. Therefore, a verdict was instructed for the $100 remaining in the hands of the trust company. From the judgment entered upon this verdict, the trustee in bankruptcy sues this writ of error.

It is conceded that the amount realized from the certificates was their full value and that all except $100 thereof was used in paying interest coupons due October 1, 1921. Therefore, since the defendant has sued out no writ of error and since we think the trial court was right in holding that the defendant could offset the amount paid upon the interest coupons, we find it unnecessary to consider the other points raised by defendant. Without discussing or determining whether the relation between the trust company and the Temtor Company as to these certificates was that of bailment or trust, we treat the case as though there were no trust and as though there was a conversion. There is no issue of exemplary or of special damages.

[1] As we view the evidence, it compels the conclusion that defendant is entitled to offset or mitigate the damages to the extent of the amount paid on the interest coupons. It is not an instance of ratification of the conversion or of estoppel to show a conversion, either of which would bar all recovery herein, but of mitigation of the damages from a conversion. This mitigation arises from the devotion of the interest payment to retiring a debt due from the bankrupt and the acceptance of the fruits thereof. Such application of funds and such acceptance of the fruits thereof constitute a waiver as to that much of the damage arising from the conversion. The legal rule cannot be in dispute. While the cases stating this

rule are, for the most part, instances of return and acceptance of the specific property, yet it is obvious that the acceptance of the expenditure for the benefit of the owner of the proceeds realized by the converter is the legal equivalent of the property represented by those proceeds where the proceeds reflect the value of the property. An extended citation of authorities appears in 38 Cyc. 2102, note 11, and in a note to Whittler v. Sharp, 49 L. R. A. (N. S.) 931.

[2] Does the evidence show that the proceeds from sale of the certificates (excepting $100 covered by the judgment herein) was applied by the converter to the benefit of the owner and that the fruits of such application were accepted? There is no dispute as to the application of such proceeds to payment of the interest coupons which were due and which constituted an undisputed indebtedness secured by lien upon much of the property belonging to the owner. The benefit of that payment, both to the owner and to creditors of the bankrupt estate, was twofold in its effect in that it not only reduced the indebtedness but that it also, pro tanto, released the burden of the lien. Thus, the devotion of the proceeds and the benefit thereof to the owner and to the bankrupt estate are clear. We think the evidence establishes also the acceptance of the fruits of this transaction. There is no dispute in this evidence and we think the necessary conclusion therefrom is clear. These canceled coupons were sent by the trust company to the Temtor Company; receipted for by the secretary or assistant secretary of the latter company; since retained by that company and no offer has ever been made to return them or to repudiate these dealings therewith until this suit was filed October 22, 1922. The trustee in bankruptcy applied for the sale of the property of the bankrupt, including that covered by this deed of trust. In that application he states that certain designated property is subject to this deed of trust; that it is subject to the principal of the bonds "together with interest thereon from October 1, 1921"; and that it is to the interest of the estate to sell free of incumbrances. The prayer of this application is as follows:

"Wherefore, he prays that he be authorized to sell the said real and personal property in such manner, with such notice, and upon such terms and conditions as the court may deem proper and may in its order specify, and that an order be issued and directed to the Mercantile Trust Company, trustee, under the deed of trust entered into by and between the Temtor Corn & Fruit Products Company as grantor, and the Mercantile Trust Company, of the city of St. Louis, Missouri, trustee, dated April 1, 1921, which deed of trust was given to secure to the bondholders the payment of the sum of one million five hundred thousand dollars ($1,500,-000.00) of first mortgage and collateral trust 8% serial gold bonds, together with the interest thereon, maturing as above set forth, which bonds are still outstanding and unpaid, *with interest thereon from the 1st day of October, 1921,* to show cause why the property covered by the above mentioned deed of trust should not be sold by your trustee, free and clear of all liens and encumbrances, and that the lien of said deed of trust be transferred to the proceeds of the sale."

The trust company was cited, appeared and consented to the application. The property was ordered sold by the referee; that order confirmed; the property was so sold and the proceeds paid to the trust company and by it distributed to the bondholders, the sale being for less than the lien debt. The trust company has filed a claim against the bankrupt estate giving credit therein both to the proceeds from the above sale and the proceeds from the converted certificates. If the foregoing does not constitute a complete enjoyment and acceptance by the bankrupt estate of the payment of these interest coupons it is difficult to state what would. We think it is amply sufficient.

The judgment should be and is affirmed.